CATHRYNE ROBERSON, Plaintiff, v. BELLEVILLE ANESTHESIA AS-
SOCIATES, LTD., Defendant and Counterdefendant-Appellee (Memorial
Hospital, Defendant and Counterplaintiff-Appellant and Third-Party Plain-
tiff-Appellant; Paul Sander, Third-Party Defendant-Appellee).

Fifth District   No. 5—89—0754

Opinion filed May 9, 1991.

Thompson & Mitchell, of Belleville (Allan M. Goodloe, Jr., and Mark S. Schuver, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Robert W. Schmieder, Stephen R. Swofford, and Bruce L. Carmen, of counsel), for appellee Paul Sander.

Richard E. Boyle and Thomas R. Peters, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Belleville Anesthesia Associates, Ltd.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant and third-party plaintiff, Memorial Hospital (the Hospital), appeals from an order of the circuit court of St. Clair County dismissing its claim for contribution against third-party defendant, Dr. Paul Sander (Dr. Sander). Defendant also appeals from an order of the circuit court of St. Clair County dismissing its indemnity claims against defendant, Belleville Anesthesia Associates, Ltd. (Belleville Anesthesia), and third-party defendant Dr. Sander. Plaintiff, Cathryne Roberson, is not a party to this appeal. In this cause, the hospital raises the following issues: (1) whether the circuit court erred in finding a good-faith settlement: (2) whether the circuit court erred in dismissing the contribution claim; and (3) whether the circuit court erred in dismissing the indemnity claims pursuant to the four-year statute of limitations. This court affirms.

On December 5, 1988, plaintiff, by her brother, next friend, and guardian, Benjamin Isaac, filed a medical malpractice action against Belleville Anesthesia and the Hospital alleging that as a result of defendants' negligence in administering anesthesia on August 1, 1983, plaintiff suffered hypoxia during the delivery of her child. On May 30,

1989, the Hospital was granted leave to file a third-party claim against Dr. Sander, who it alleged was responsible for administering the anesthesia. The third-party complaint sought contribution from Dr. Sander pursuant to the Contribution Among Joint Tortfeasors Act (the Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*). The complaint also sought indemnification from Dr. Sander alleging that if Belleville Anesthesia was an apparent agent of the Hospital, then Dr. Sander, as an employee of Belleville Anesthesia, should indemnify the Hospital. The Hospital also filed a counterclaim against Belleville Anesthesia under both the Contribution Act and a similar indemnity theory.

On June 22, 1989, Dr. Sander filed a motion to dismiss the third-party complaint alleging that the claims were barred by the four-year statute of limitations applicable to physicians and hospitals. (Ill. Rev. Stat. 1987, ch. 110, par. 13−212.) Dr. Sander argued that the statute of limitations applies to all actions arising out of conduct by certain people in the health care profession. On July 6, 1989, the circuit court, citing *Antunes v. Samerng Sookhakitch* (1989), 181 Ill. App. 3d 621, 537 N.E.2d 333, and noting its conflict with *Hayes v. Mercy Hospital & Medical Center* (1989), 180 Ill. App. 3d 441, 535 N.E.2d 1131, held that the statute of limitations did not apply to claims for contribution. The circuit court denied the motions to dismiss with regard to the statute of limitations.

On August 8, 1989, the Hospital filed a second amended third-party complaint. Belleville Anesthesia filed a motion to dismiss also alleging that the claims were barred by the statute of limitations. On October 11, 1989, the motion was argued, Belleville Anesthesia and Dr. Sander taking the position that the statute of limitations should apply to both the contribution and indemnity claims. The motion was taken under advisement.

On October 11, 1989, the circuit court also held a good-faith hearing concerning a proposed settlement agreement between plaintiff, Belleville Anesthesia and Dr. Sander. The settlement was in the nature of $1 million, but was imprecise because of the possibility of a structured settlement. The money was being tendered by Belleville Anesthesia's and Dr. Sander's insurance company. The settlement released Dr. Sander from liability to plaintiff, even though plaintiff had no access to Dr. Sander's insurance policy, for $1 and other valuable consideration.

The Hospital's counsel objected to the settlement because he had not been allowed to inspect the settlement documents. The Hospital

further objected that the $1 paid by Dr. Sander was nominal consideration for a release from liability.

On October 12, 1989, the circuit court reversed its previous order of July 6, 1989, and held that the Hospital's indemnity counts against both Belleville Anesthesia and Dr. Sander should be dismissed for failure to file within the four-year statute of limitations. The court further found that the settlement was in good faith and therefore dismissed the contribution counts.

On November 9, 1989, the circuit court entered its order finding no just reason to delay enforcement or appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). The Hospital filed notices of appeal on November 13, 1989. On July 24, 1990, we granted a motion to cite *Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, 557 N.E.2d 873, as additional authority.

The Hospital's first issue on appeal is whether the circuit court erred in dismissing its implied indemnity claims pursuant to section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—212). Both Dr. Sander and Belleville Anesthesia respond that according to the statute, any action for medical malpractice must be brought within four years from the date of the act or omission which allegedly constituted malpractice.

Belleville Anesthesia and Dr. Sander also argue that the enactment of the Contribution Act abolished the doctrine of implied indemnity. Since our opinion is dispositive of the case for other reasons, we do not reach this issue.

■ Section 13—212 provides in relevant part:

"(a) Except as provided in Section 13—215 of this Act, no action for damages for injury or death against any physician *** whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought *** more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).

The supreme court clearly stated that section 13—212(a) bars third-party claims for contribution against doctors. (*Hayes*, 136 Ill. 2d 450, 557 N.E.2d 873; see also *Vogt v. Corbett* (1990), 138 Ill. 2d 482, 486, 563 N.E.2d 447, 449.) As the contribution claim was brought after the expiration of the four-year statute of repose, the claim was barred, and the circuit court was correct.

■ The Hospital argues in its reply brief that only count I of its third-party complaint was based upon contribution. Count II was

based upon an implied indemnity theory. In *Hayes*, the supreme court determined that an "action for damages" as provided by section 13—212 included third-party actions for contribution. The court's rationale is equally as convincing when applied to an implied indemnity claim. As is the case with contribution, the basis of an indemnitor's obligation rests on his liability in tort to the injured party. The indemnitor is obligated for the damages directly created by the indemnitor's negligent actions. An action for implied indemnity is just as much an "action for damages" as is an action for contribution under section 13—212. See *Hayes*, 136 Ill. 2d at 457, 557 N.E.2d at 876.

█ We do not mean to say that every action for indemnity is governed by section 13—212. Section 13—212 applies only to actions for implied indemnity, not to claims for express indemnity. An action for express indemnity, which is based on a contract, is governed by section 13—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—206). Actions for express indemnity are not affected by the Contribution Act. *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 27, 495 N.E.2d 496, 497; *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 752, 520 N.E.2d 932, 937; *Stephan v. Sears, Roebuck & Co.* (1986), 147 Ill. App. 3d 833, 837, 498 N.E.2d 687, 690.

The Hospital's next issue on appeal is whether the circuit court erred in finding a good-faith settlement. The Hospital specifically argues that the court failed to consider all factors relevant to the determination of good faith. Belleville Anesthesia and Dr. Sander respond that, first, the Hospital did not meet its burden of proving lack of good faith, and second, the record does not affirmatively reflect error.

█ The First District Appellate Court set out the applicable standard in *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 537 N.E.2d 871, when it said:

> "The [Contribution] Act does not define good faith. However, the Illinois Supreme Court has stated that when determining whether an agreement was entered into in good faith, courts must take into account the entire circumstances surrounding the settlement. [Citation.] Where a preliminary showing of good-faith settlement is made, a presumption of validity arises. [Citations.] Once the preliminary showing has been made, the burden shifts to the party opposing settlement, who must prove by clear and convincing evidence that the settlement is invalid." (181 Ill. App. 3d at 829-30, 537 N.E.2d at 872-73.)

Moreover, Illinois courts have left the question of what is required for a finding of good faith to the broad discretion of the circuit court.

(*Ruffino v. Hinze*, 181 Ill. App. 3d at 832, 537 N.E.2d at 874; *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 751-52, 520 N.E.2d 932, 937; *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 765, 484 N.E.2d 1232, 1235 (circuit court in the best position to determine what type of hearing is necessary to fully adjudicate the issue of good faith); *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 128, 478 N.E.2d 581, 587-88.) A separate evidentiary hearing is not required. *Ruffino*, 181 Ill. App. 3d 827, 537 N.E.2d 871; *Lorenz v. Air Illinois, Inc.* (1988), 168 Ill. App. 3d 1060, 1064, 522 N.E.2d 1352, 1355; *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 484 N.E.2d 1232; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 128, 478 N.E.2d 581, 587.

■ Although a separate evidentiary hearing is not required, the circuit court did hold a hearing. It listened to the arguments by all parties. We do not believe the Hospital met its burden of proving by clear and convincing evidence the invalidity of the proposed settlement. As in *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122-23, 499 N.E.2d 1373, 1380, the circuit court was very much involved in the litigation before it. The record indicates the court had a thorough knowledge of the case and its surrounding circumstances. In light of the very broad discretion standard established by our supreme court, we cannot see an abuse of discretion here. In our opinion, the very act of settling creates a presumption of good faith. (*Bituminous Insurance Cos. v. Ruppenstein* (1986), 150 Ill. App. 3d 402, 405, 501 N.E.2d 907, 909, citing *Wasmund v. Metropolitan Sanitary District* (1986), 135 Ill. App. 3d 926, 482 N.E.2d 351.) Once Belleville Anesthesia and Dr. Sander made a preliminary showing of settlement, the burden shifted to the Hospital, which did not prove by clear and convincing evidence that the settlement was not in good faith. In light of the evidence presented to the circuit court, the record does not indicate an abuse of discretion.

Finally, the Hospital specifically complains that the court failed to inquire about a "Mary Carter" agreement. The record, however, indicates that counsel for both Belleville Anesthesia and Dr. Sander stated to the court that such an agreement did not exist. Once again, deferring to the circuit court's discretion, and referring to the record, we see no reason not to accept the word of these attorneys.

> "The factors that affect a plaintiff's decision to settle are multifarious. Thus, it is impossible to formulate a bright-line test to articulate when the amount of disproportionality indicates bad faith in all cases. It is therefore preferable to allow a trial judge a considerable amount of discretion in deciding what

type of evidentiary hearing should be held to produce the facts necessary for the court to decide based upon all the circumstances." Perona & Murphy, *Good Faith Settlement Under the Contribution Act: Do Trial Courts Have Too Much Discretion?*, 20 Loy. U. Chi. L.J. 961, 972 (1989).

For the foregoing reasons, the order of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK, P.J., and WELCH, J., concur.