CRAIG CARLSON, Plaintiff-Appellant, *v.* THE MOLINE BOARD OF EDU-
CATION, SCHOOL DISTRICT NO. 40, MOLINE, Defendant-Appellee.

Third District   No. 3—83—0511

Opinion filed June 6, 1984.—Rehearing denied July 13, 1984.

Joseph Michael O'Callaghan and Alice Dolan, both of O'Callaghan & Waller, of Chicago, for appellant.

Martin H. Katz and Donovan S. Robertson, both of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This action was commenced by the plaintiff, Craig Carlson, against the Moline Board of Education, the defendant, in the circuit court of Rock Island County. The plaintiff sought to recover money damages for personal injuries he incurred. The complaint alleged three theories for recovery. The complaint recited a cause of action in common law negligence, for which both compensatory and punitive damages were sought. The complaint recited a cause of action under the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). Finally, the complaint recited a cause of action under the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 10—20.21). In an interlocutory order, the circuit court dismissed the causes of action under the Struc-

tural Work Act and the School Code, finding in the dismissal order that there was no just reason for delaying enforcement or appeal. The plaintiff seeks our review of that decision.

Sometime prior to March 2, 1982, the defendant advertised for public bid a construction project to perform certain repairs on the school building owned by the defendant. Specifically, the project entailed the removal of floor tile and underlayment and the repair and replacement thereof. In the performance of this project, it was specified that an assembly of lockers would be removed to permit the floor repairs to be completed, with the locker assembly to be reinstalled at the completion of the project. Edstrom Carpets was the successful bidder and was awarded the contract to make the repairs.

The plaintiff was an employee of Edstrom Carpets assigned by his employer to perform work on the subject contract. During the course of his work, the assembly of lockers tipped over and fell on the plaintiff. The blow from the assembly of lockers, which was 8½ feet high, 108 feet long, and 4,000 pounds in weight, caused the plaintiff severe injuries and rendered him a paraplegic.

As earlier recited, the plaintiff filed a complaint in the circuit court of Rock Island County seeking to recover damages for his tragic injuries. In response to that complaint, the defendant filed a motion attacking the pleading pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). That motion challenged the plaintiff's alleged cause of action under the Structural Work Act and under the School Code. The circuit court granted the defendant's motion and dismissed both causes of action. Further, the circuit court denied the plaintiff leave to amend his pleadings. The plaintiff urges us to hold that the relief granted by the circuit court exceeded the appropriate scope of relief available under section 2—615.

■ Before reaching the issue raised by the plaintiff on appeal, we must first turn to an affirmative matter raised by the defendant in its brief. The defendant asserts that this appeal was improperly brought, and therefore we are without jurisdiction to consider its merits since no final order has been entered with respect to the cause of action alleged in plaintiff's complaint. Supreme Court Rule 304 (87 Ill. 2d R. 304(a)) provides:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal."

The defendant urges that the order of the circuit court dismissing the causes of action under the Structural Work Act and the School Code is not a final judgment as to one or more but fewer than all of the claims of the plaintiff. We need not consider this contention at length, since the appellate court on prior occasions has considered this very issue. In each case, the court has determined that where the elements of proof for several causes of action are separate and distinct, then each cause of action constitutes a separate claim. (*Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41; *Rone v. Boncar Construction Co.* (1976), 45 Ill. App. 3d 1, 358 N.E.2d 1315; *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 403 N.E.2d 495.) The cases cited by the defendant are more than adequately distinguished by these authorities for us to conclude that the order of the circuit court was a final judgment as to two separate claims brought by the plaintiff. Therefore, we do have jurisdiction of this appeal.

■ We cannot agree with the plaintiff's assertion that the dismissal of the claims under the Structural Work Act and the School Code exceeds the scope of relief available under section 2—615. We agree with the plaintiff that a motion under this section of the Code of Civil Procedure admits all well-pleaded facts. However, such a motion does not admit the conclusions of law to be drawn from those facts. (*Richards v. Leimbacher* (1971), 131 Ill. App. 2d 775, 267 N.E.2d 523; *Chicago Teachers Union v. Board of Education* (1973), 14 Ill. App. 3d 154, 301 N.E.2d 833.) In reviewing the sufficiency of the cause of action alleged, the plaintiff is entitled to all the reasonable intendments and inferences which can be drawn from the facts alleged. The court is not required to reach unreasonable and unwarranted conclusions, to draw unreasonable and unwarranted inferences, in order to sustain the sufficiency of the complaint. Where the complaint can be sustained only with such assaults on common experience, the circuit court may properly dismiss the claim pursuant to a section 2—615 motion.

■ Given, then, that the circuit court did not exceed its permissible authority in dismissing the plaintiff's causes of action under the Structural Work Act and the School Code, we next address the issue of whether the circuit court properly exercised its permissible authority. The School Code requires that school boards such as the defendant:

"let all contracts for supplies, materials or work or contracts with private carriers for transportation of pupils involving an expenditure in excess of $5000 to the lowest responsible bidder

after due advertisement \*\*\*." (Ill. Rev. Stat. 1983, ch. 122, par. 10—20.21.)

The plaintiff urges that where a school board fails to let contracts to "responsible" bidders, any resulting personal injuries give rise to a cause of action against the school board. The plaintiff further alleges that Edstrom Carpets was not a "responsible" bidder, and because of its irresponsibility, the plaintiff was injured. We believe the purpose of the section of the School Code above cited was to provide protection for taxpayers of a particular school district from financially irresponsible contractors. (*Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880, 376 N.E.2d 377.) The statute was not designed to protect the safety of employees of successful bidders. Hence, we conclude that no cause of action accrued under the above-cited section of the School Code.

> "Where the suit alleges injury due to violation of a statute, the doctrine of standing requires that the plaintiff be one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed. [Citations.] The object of the statute, the nature of the duty imposed by it, and the benefits resulting from its performance dictate what persons are entitled to sue thereunder. [Citation.]" (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 748, 359 N.E.2d 1137, 1140.)

Where, as here, the object of the statute was to protect the public first, not to protect the safety of laborers, the plaintiff is not one for whose benefit the statute was enacted. We conclude that the circuit court correctly dismissed the cause of action under the School Code.

The final contention raised by the plaintiff concerns the circuit court's dismissal of his cause of action under the Structural Work Act. The statute creates "a right of action" for "any injury to person or property, occasioned by any wilful violations" of the safety requirements recited therein. (Ill. Rev. Stat. 1983, ch. 48, par. 69.) Among the safety requirements recited are the following:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engage thereon, or passing un-

der or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1983, ch. 48, par. 60.)

In dismissing plaintiff's complaint, the circuit court concluded that at the time of the mishap the plaintiff was not using a scaffold or other similar mechanical device and a scaffold was not needed for the work being done. The lower court determined that the plaintiff was "employed or engaged" on the floor, and that the plaintiff was not injured by the floor being used as a scaffold. Finally, the Rock Island county court felt that no other legal conclusion could be drawn from the facts pleaded, regardless of any amendments plaintiff might add to his pleadings.

■ At issue is the scope of the definition of the term scaffold as used in the act. Clearly, under some circumstances, a floor can be a scaffold, but only if it is used in lieu of a scaffold, ladder or support on a temporary basis. Where, however, a floor is used as a floor, it is not a scaffold or other similar mechanical device within the statutory definition. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607.) It is also clear that failure to provide a scaffold is no defense to liability under the act where a scaffold is necessary for the proper and adequate protection of life and limb. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724.) In reviewing the facts as alleged in plaintiff's complaint, we are compelled to agree with the circuit court, that is, the floor was being used as a floor, not a scaffold, and the defendant did not fail to provide a scaffold where one was necessary.

■ While the Structural Work Act should be liberally construed, liberal construction does not require that every place where a workman chooses to stand must be labeled a scaffold within the meaning of the statute. (*Thon v. Johnson* (1961), 30 Ill. App. 2d 317, 174 N.E.2d 400; accord, *Herman v. Swisher* (1983), 115 Ill. App. 3d 179, 450 N.E.2d 28.) Where, as here, nothing distinguishes a completed floor from any other floor as that term is commonly used and understood, but for the fact that a workman chose to stand on it, it is not, as a matter of law, a scaffold.

■ A more troubling question is whether the defendant failed to provide a necessary scaffold. The plaintiff correctly observes that the statutory definition of scaffold includes "stays" and "supports." He suggests that the assembly of lockers would not have fallen if it had been adequately braced with "stays" or "supports." While the omitted stays or supports did not provide a working platform for the plaintiff, he suggests that the act imposes no such requirement before

liability attaches. In *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 414 N.E.2d 147, the appellate court held that to come within the act's coverage, a case must feature harm caused by a failure of something a worker is using to support *himself*. Where that feature is missing, there can be no liability under the statute. Just a year later, the appellate court rejected the holding in *Matthews*, finding that "supports" and "stays" need not function as "scaffolds" to be within the scope of the Structural Work Act. (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051.) In rejecting the *Matthews* decision, the *Urman* court reasoned that to construe "stays" and "supports" as exact synonyms of "scaffold" would judicially erase terms that the legislature thought important enough to include, thereby rendering those terms surplusage. We cannot agree. A ladder is a platform for a workman, but it is not a scaffold. While both devices perform similar functions, the terms do not describe the same device nor are the terms synonymous. While tin snips, a circular saw and a torch all function for the workman in a similar manner, *i.e.*, to cut building materials, the devices are quite different tools and the terms which describe them are hardly synonymous. We believe the same is true of the devices described in the Structural Work Act. Accordingly, we cannot agree that we would judicially erase legislative enactments if we construe the act so that each device listed performs the same function.

The *Urman* court also faulted the *Matthews* decision for failure to cite authority for its holding. We find authority for the *Matthews* holding in the language of the Structural Work Act itself. The act enumerates a series of devices, and then creates a class of protected persons among those "employed or engaged" on such devices. We believe this additional language not only creates a class of protected persons, but in addition further manifests the intention that the devices described should in some manner provide a platform for workmen.

■ While the appellate court decisions of *Urman* and *Matthews* are in conflict, and although we believe the reasoning employed in *Urman* is suspect, nevertheless the ultimate authority by which we must be guided in our disposition of this case is found in pronouncements of our supreme court. That court, quoting approvingly from the Wisconsin Supreme Court, stated:

> "The scope [of the devices described in the statute] would reasonably include any temporary structure made up of parts, viewing the term in its broadest scope, used for support while doing any kind of work mentioned in the law,—*any kind of an elevated platform for workmen to use in the performance of*

974

*their duties.* Any combination for use in doing any kind of work mentioned in the statute *where the servant is dependable thereon for support,* in place of an ordinary surface, such as the ground or floor, is a mechanical contrivance." (Emphasis added.) (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 450, 236 N.E.2d 724, 727.)

As the supreme court in *Barenfanger* unequivocally echoes the rule in *Matthews,* and as we are bound to follow the rules of that court over conflicting decisions of the appellate court, we are compelled to hold that the devices described in the act generally refer to contrivances on which the workman is dependent for support. (14 Ill. L. & Prac. *Courts* sec. 82 (1968).) It follows that failure to provide braces for the assembly of lockers, where the workman was not dependent on the assembly for support, does not state a cause of action under the Structural Work Act.

For the reasons above stated, we agree with the circuit court of Rock Island County. The plaintiff's complaint did not state a cause of action under the School Code or the Structural Work Act, nor could the complaint be amended in any manner to present such a claim. In keeping with this view, we affirm the decision rendered below.

Affirmed.

HEIPLE and BARRY, JJ., concur.