FRANK MIRABELLA, Petitioner-Appellant, v. THE RETIREMENT BOARD OF THE COUNTY EMPLOYEES' ANNUITY AND BENEFIT FUND OF COOK COUNTY *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—89—0940

Opinion filed May 15, 1990.

Law Offices of Joseph V. Roddy, of Chicago (Joseph V. Roddy, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Joan S. Cherry, Susan Condon, and Sean P. Fitzgerald, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Petitioner charges that respondent Retirement Board of the County Employees' Annuity and Benefit Fund of Cook County and respondent Fitzgerald, the Board's director (collectively, the Board), improperly terminated his pension benefits after he was convicted of a felony in 1987, contending that the fact that he was employed by another local governmental entity prior to July 11, 1955, the applicable service entry date set by statute, places him beyond the reach of the forfeiture provision of the law. After failing in an administrative proceeding and in a review proceeding in the circuit court, petitioner brings this appeal. The issue presented to us is whether the Board properly held that the provisions of the felony forfeiture statute applied to petitioner.

Petitioner was employed by the Chicago Park District from September 1, 1954, until September 30, 1955. Approximately three years later, on August 20, 1958, he reentered the public sector by taking a job with the Cook County clerk's office, which he held until December 31, 1958. After this second break from public employment, petitioner worked for the Cook County sheriff's office from May 21, 1961, until January 1963. Petitioner's next government job was with the City of Chicago from February 23, 1967, to April 8, 1970. He then rejoined the sheriff's office from January 15, 1971, until December 31, 1986.

On March 10, 1983, petitioner was advised by the Park Employees' Annuity and Benefit Fund that by repaying a refund made earlier by the Fund, he could acquire additional service credits toward his pension rights, and his initial service date would accordingly be established as of September 1, 1954. Petitioner repaid the necessary amount on or before September 25, 1984.

On May 8, 1987, petitioner was convicted of a felony in the United States District Court for the Northern District of Illinois. In a letter dated October 7, 1987, the Board advised petitioner that his application for pension benefits had been rejected and that his right to a

pension had been forfeited pursuant to section 9—235 of the Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 9—235), which applied to all individuals hired after July 11, 1955. After an administrative hearing was held on petitioner's application for benefits, the Board affirmed its original determination.

The circuit court subsequently upheld the Board's decision and denied petitioner's request for administrative review, holding that the fact that petitioner did not first begin working for the county until 1958, well after the July 11, 1955, service entry date provided for in the statute, was dispositive. This appeal followed.

OPINION

As noted above, the Board's finding that petitioner's pension benefits were forfeited was predicated on section 9—235 of the Pension Code, which provides:

"None of the benefits provided in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as an employee.

This section shall not operate to impair any contract or vested right heretofore acquired under any law or laws continued in this Article, nor to preclude the right to a refund.

All future entrants entering service after July 11, 1955, shall be deemed to have consented to the provisions of this section as a condition of coverage." (Ill. Rev. Stat. 1987, ch. 108½, par. 9—235.)

The provision defining the terms relating to the county employees' pension fund states, in pertinent part, that a "future entrant" is one who "becomes an employee on or after the effective date [July 1, 1955]." Ill. Rev. Stat. 1987, ch. 108½, par. 9—110(a).

Petitioner does not dispute that his felony conviction was service related; he contends, however, that the fact that he initially worked for the county in 1958 does not mean that he was a "future entrant" as of July 11, 1955, because his prior governmental employment should be considered. Without citing any case law in support, petitioner relies primarily on section 20—117 of the Retirement Systems Reciprocal Act (Reciprocity Act) (Ill. Rev. Stat. 1987, ch. 108½, par. 20—117), which states that pension credits under all participating systems shall be combined for purposes of determining whether an individual's rights have become vested. He argues that this tacking of enrollments should rightfully occur in this case, and that he is thus in the same position as any individual who first began work in government service prior to July 11, 1955, and stayed with the same govern-

mental entity until retirement. See, *e.g., Borg v. Village of Schiller Park Police Pension Board* (1984), 99 Ill. 2d 376, 459 N.E.2d 951; *Arnold v. Board of Trustees of the County Employees' Annuity & Benefit Fund* (1981), 84 Ill. 2d 57, 417 N.E.2d 1026; *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582.

The Board responds that the legislature never intended that the Reciprocity Act should lead to such a result; that the purpose of the statute is to permit governmental employees to combine service for the express purpose of meeting the qualifying length of service requirements, and does not imply that combining service is permissible to avoid an application of section 9—235. Section 20—101 of the Reciprocity Act provides:

> "There is established a plan for the continuity and preservation of pension credit, in accordance with the provisions hereof, in the case of employees transferring employment from one governmental unit to another. The purpose of this plan is to assure full and continuous pension credit for all service in public employment which is covered by a retirement system." (Ill. Rev. Stat. 1987, ch. 108½, par. 20—101.)

The Board further argues that a number of different sections of the Pension Code not directly applicable to county employees define "future entrant" as one who either becomes employed by the appropriate governmental entity after the effective date for the first time, or who reenters service on or after the service date. (Ill. Rev. Stat. 1987, ch. 108½, pars. 5—111 (policemen's annuity and benefit fund), 6—108 (firemen's annuity and benefit fund), 8—115 (municipal employees).) These statutory provisions are relevant here because the use of the same words or phrases in different sections of a statute should be given a consistent meaning unless legislative intent to the contrary is clearly expressed. (*Borg v. Village of Schiller Park Police Pension Board* (1982), 111 Ill. App. 3d 653, 444 N.E.2d 631, *aff'd* (1984), 99 Ill. 2d 376, 459 N.E.2d 951.) Therefore, the Board concludes, the petitioner's status as a "future entrant" should be governed by these provisions, and the fact that petitioner first worked for the county in 1958 controls the question of the applicability of section 9—235.

Petitioner overlooks the highly significant fact that he applied for and received a refund of his Park District pension contributions. For that reason the analysis of the court in *People ex rel. Wright v. Board of Trustees of the Teachers' Retirement System* (1987), 157 Ill. App. 3d 573, 510 N.E.2d 1283, which has not been cited by either party, is directly on point. In that case, plaintiff began teaching in the Illinois

public school system in 1953, at which time he automatically became a member of the Teachers Retirement System (TRS). After the 1955-56 school year, he left Illinois to teach in Indiana and received a refund of his contributions to the TRS. He returned to Illinois in 1962, reentered the TRS and remained a member until 1982, at which time he accepted employment with the Federal government. He subsequently retired and began receiving pension benefits from the TRS in 1982, after paying an additional $6,093.97 to reestablish his withdrawn service credit for the schools years 1953-54 and 1955-56 and to receive credit for the years spent in the Indiana school system. His pension benefits were later terminated pursuant to section 16—199 (Ill. Rev. Stat. 1985, ch. 108½, par. 16—199), a forfeiture provision comparable to the one applicable in this case.

The court agreed with the TRS's argument that by applying for and accepting a refund of contributions in 1956, plaintiff terminated his membership in the Illinois plan and forfeited any pension benefits he may have acquired as of that time. Consequently, when he reentered the TRS in 1962, his status was no different from that of any newly hired individual. The court also rejected plaintiff's argument that his refunding $6,000 to the TRS in order to reestablish his 1953-56 credits served to reinstate all rights which he had previously acquired.

In this case, petitioner ceased to be employed by the Park District on September 30, 1955, and did not resume government service again until August 20, 1958. Later, exactly as in *Wright*, petitioner received a refund from the Park Employees' Annuity and Benefit Fund. His 1958 employment therefore did not restore any right to benefits which may have accrued to him as a result of his earlier employment, a conclusion that is not affected by his later repayment of his contribution refund.

For the above and foregoing reasons the judgment of the circuit court is affirmed.

Judgment affirmed.

DiVITO, P.J., and HARTMAN, J., concur.